IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**PHIL TAYLOR individually**
**and on behalf of a class of similarly situated**
**individuals,**

       **Plaintiff,**

v.                                                       Civil Action No: _____

**PFIP, LLC.**

       **Defendant.**

## CLASS ACTION COMPLAINT

### Introduction

1. Federal law bans nonemergency "robocalls," *i.e.*, telephone calls placed through an automatic telephone dialer system, to cellular telephones unless the recipient expressly consents to receive those calls. Defendant PFIP, LLC ("Defendant" or "Planet Fitness"), who operates Planet Fitness gymnasiums, violated this prohibition by sending promotional text messages to individuals without securing that consent.

2. Plaintiff Phil Taylor ("Plaintiff" or "Mr. Taylor") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3. Because telemarketing campaigns result in text messages to hundreds of thousands or even millions of potential customers *en masse*, Mr. Taylor brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from Planet Fitness.

## Parties

4. Plaintiff Phil Taylor is a citizen of Massachusetts, and this district.

5. Defendant PFIP, LLC is a New Hampshire limited liability company with its principal place of business in Newington, NH that operates a franchise of fitness centers known as Planet Fitness.

## Jurisdiction

6. The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

## Venue

7. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## The Legal Basis of the Claims

## The Telephone Consumer Protection Act

8. Advances in telecommunications technology have benefitted American society, but those benefits are not cost-free—new technologies bring with them new ways to intrude on individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone technology, including the use of autodialers to clog telephone lines with unwanted calls and unsolicited messages that interfere with the transmission of legitimate messages.

9. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy." 47 U.S.C. § 227, Congressional Statement of Findings No. 5.

*The TCPA prohibits robocalls to cell phones unless the
recipient expressly consents to receive the calls*

10. While the statute imposed restrictions on a wide set of telemarketing practices, its strictest provisions apply to telemarketing by automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1).

11. An automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. *Id.* § 227(a)(1). The term extends to equipment that has the capacity to dial numbers without human intervention. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14093 (2003).

12. With the limited exception of calls made for emergency purposes, the TCPA bans *all* calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

13. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

**The Factual Basis of the Claims**

*"Spam" text messages provide the telemarketers with instant
communication with consumers to promote the sale of goods and services*

14. In recent years, marketers stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations to consumers easily and cheaply.

15. One of the newest methods of bulk marketing is to advertise through text messages sent to mobile phones.

16. Unlike faxes and unanswered phone calls, a text message allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. Many cell phones immediately alert the recipient of new text messages. Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members, and friends. Text messaging is also used by schools, police departments, fire departments, and emergency medical services across the country.

17. The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages.

18. And unlike other forms of advertisement, spam texts can cost its recipients money. Many wireless customers have telephone plans that charge a fee for each text message, or that permit a limited number of text messages per month.

*The Defendant sent Plaintiff a Spam Text asking him to renew his gym membership*

19. In 2010, the Plaintiff became a member of a Planet Fitness gym.

20. In June of 2012, he cancelled that membership.

4

21. On December 17, 2013, Plaintiff received the following text:

> Happy Holidays from Planet Fitness! We welcome you back for an entire year for only $99! All other fees waived Hurry, offer expires Dec 24th Call (781) 229-9999

22. Plaintiff had no intention or desire to receive telemarketing messages on his cell phone.

23. Plaintiff did not expressly consent to receive Planet Fitness telemarketing calls.

24. Despite the fact that the text message has a call back number for the Burlington Planet Fitness location, the text message campaign was organized and initiated by the Defendant, as it had done for other Planet Fitness locations.

25. When sending text messages *en masse* "SMS Short Codes" are used. SMS short codes are essentially shortened phone numbers, and, like phone numbers, are used to identify the sender.

26. The December 17, 2013 text the Plaintiff received was from SMS code 467-67

27. Upon information and belief, the SMS code for the text to the Plaintiff's phone belongs to CallFire, a California based service that allows customers to send text messages *en masse*.

28. On its website, CallFire advertises the ability to send promotional text messages promoting "Gym and Fitness Services", stating that "with our system, you can easily text one customer as you would 100,000 regarding…Market Promotions." *See* https://www.callfire.com/blog/2013/02/07 (Last Visited January 26, 2014).

29. In fact, CallFire advertises that Planet Fitness is a current client of its text message broadcast service.

**Class Action Allegations**

30.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

31.     The classes of persons Plaintiff proposes to represent include all persons within the United States who, within the four years prior to the filing of the initial Complaint, received text message calls to their cellular telephone promoting Planet Fitness goods or services, that were delivered using an automatic telephone dialing system.

32.     The class as defined above is identifiable by phone records and phone number databases.  On information and belief, the potential class members number in the thousands and constitutes a class so numerous that joinder of all class members is impracticable.

33.     Plaintiff is a member of the class.

34.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

      a. Whether Defendant violated the TCPA by engaging in telemarketing via auto-dialer.

      b. Whether the Defendant obtained prior express consent from consumers before transmitting unsolicited text messages to consumer's cell phones;

      c. Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of Planet Fitness's actions.

35.     Plaintiff's claims are typical of the claims of the class.

36. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions.

37. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

38. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

39. Plaintiff is capable of and is willing to represent the other members of the class.

## Legal Claims

*First Cause of Action for Violation of the TCPA:*
*Text Messages to Cell using an Automatic Telephone Dialing System*

40. Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

41. The TCPA prohibits the making of any call—without prior express consent of the called party—by using any automatic telephone dialing system to a cellular telephone.

42. Defendant violated the TCPA by transmitting a text message to the Plaintiff's cell phone via auto-dialer without prior express consent.

43. Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

44. As a result of Defendant's illegal conduct as alleged herein, the members of the class suffered actual damages and, under § 227(b)(3)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

*Second Cause of Action: Injunctive Relief*

45. Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

46. Defendant, its authorized agents, vendors, or contractors have possession, custody and control of the business records, databases, computer systems and other information and equipment necessary to identify the members of the class, including but not limited to the names, addresses and cellular telephone numbers of the class members. Unless immediate injunctive relief is ordered, Defendant, its authorized agents, vendors, or contractors may alter, erase, delete, destroy or otherwise dispose of and remove such systems, records and equipment. For this reason, Plaintiff is entitled to an order prohibiting and enjoining Defendant, its authorized agents, vendors, or contractors from altering, deleting, destroying or otherwise disposing of any documents, records, databases or computer systems that are necessary to identify the members of the class.

47. The TCPA expressly authorizes injunctive relief to prevent further violations of the TCPA.

48. The Plaintiff, acting on behalf of the Class, respectfully petitions this Court to order Defendant, including but not limited to its employees, agents or other affiliates, to immediately cease engaging in unsolicited text message marketing in violation of the TCPA.

## Relief Sought

Plaintiff, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An injunction requiring Defendant to cease all wireless spam activities and restraining Defendant from altering, erasing, changing, deleting, destroying or otherwise removing or disposing of any documents, records, databases, computer systems and the like currently in its possession or control or in the possession or control of its agents and contractors which are used or useful in identifying all persons, corporations or other entities to whom Defendant has transmitted text message advertisements;

3. An order preliminarily and permanently enjoining Defendant from engaging in the practices challenged herein;

4. A minimum of $500.00 in damages for each violation of the TCPA;

5. Reasonable attorneys' fees and costs; and

6. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: February 10, 2014

For the Plaintiff,

_/s/ Anthony I. Paronich_____
Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net

10